STEPHEN YAGMAN (SBN 69737)
filing@yagmanlaw.net
YAGMAN + REICHMANN, LLP
333 Washington Boulevard
Venice Beach, California 90292-5152
(310) 452-3200

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| **J. MEDINA** and **O. MEDINA,**<br><br>Plaintiffs,<br>v.<br>**ALEJANDRO VILLANUEVA, KATHRYN BARGER, JANICE HAHN, SHEILA KEUHL, HOLLY MITCHELL, HILDA SOLIS, VICTOR GARCIA, JENNIFER GARCIA,** and **10 UNKNOWN NAMED DEFENDANTS,**<br><br>Defendants. | **COMPLAINT**<br><br>(Civil Rights, 42 U.S.C. § 1983; RICO, 18 U.S.C. § 1961, *et seq.*, Police Brutality and Thuggery, Obstruction of Justice, Conspiracy)<br><br>**CLASS ACTION** |

Plaintiffs make the following allegations in support of the this complaint:

## JURISDICTION AND VENUE

1. Plaintiffs assert federal claims, under 42 U.S.C. § 1983 and 18 U.S.C. § 1961, *et seq.*, against defendants, subject matter jurisdiction lies pursuant to 28 U.S.C. § 1331 of these federal claims.

2. The matters that are the bases for this action occurred in Los Angeles County, California, and therefore venue lies in the United States District Court for the Central District of California, and in its Western Division, pursuant to 28 U.S.C. § 1391.

### THE PARTIES

3. Plaintiffs are victims who have been subject to Los Angeles Sheriff Department ("LASD") police brutality, thuggery, conspiracy, and racketeering; and defendants are **ALEJANDRO VILLANUEVA,** Los Angeles County Sheriff, **KATHRYN BARGER, JANICE HAHN, SHEILA KEUHL, HOLLY MITCHELL,** and **HILDA SOLIS,** who are Los Angeles County supervisors, and Los Angeles County deputy sheriffs **VICTOR GARCIA, JENNIFER GARCIA,** and **10 UNKNOWN NAMED DEFENDANTS, 1-10**, all of whom are referred to collectively as "defendants", and the defendants also include **10 UNKNOWN NAMED DEFENDANTS,** whose true identities presently are unknown, who participated in the wrongful acts alleged hereinbelow, whose conduct is culpable, whose unknown names will be replaced by their true identities when those true identities are learned, or are persons and/or entities whose true names presently are unknown, and who may have engaged in some conduct that is culpable with respect to plaintiff, as set forth hereinbelow. All defendants engaged in the same conduct by participating in, facilitating, and making the decisions that resulted in the wrongs hereinbelow alleged.

4. Defendants, each and all, are sued in both their individual capacities and in their official capacities, for the policy and custom claims made under *Monell v. Dep't of Soc. Svcs. of the City of New York*, 436 U.S. 657 (1978), with respect to which claims only, defendants are sued in their official capacities only, and for all other claims are sued in both capacities.

5. Plaintiff s are persons who have been brutalized and subjected to thuggery and RICO violations and federal constitutional violations by defendants.

6. Defendants and each of them play and played some material role in the wrongful acts and/or omissions alleged hereinbelow and in the setting and carrying out of policies of the LASD, and all defendants at all times acted with deliberate indifference to plaintiff's rights, as alleged herein.

**ALLEGATIONS COMMON TO EACH COUNT**

7. Each and every allegation set forth in each and every averment herein is incorporated by this reference in each and every other averment and allegation of this pleading.

8. All acts and/or omissions perpetrated and/or engaged in by each defendant, in their individual capacities, were done maliciously, callously, oppressively, wantonly, recklessly, with deliberate indifference to the rights allegedly violated, despicably, with evil motive and/or intent, in disregard of the rights of plaintiffs and class members, and in clear violation of the federal Constitution and of the California Constitution, and of controlling federal law, both statutory and common law, as set forth by both the United States Supreme Court and the United States Court of Appeals for the Ninth Circuit. At all times set forth herein all defendants acted under color state law.

9. On or about March 24, 2020, in Los Angeles County, defendant deputy sheriffs stopped, detained, arrested, and initiated and caused criminal charges to be made against plaintiffs, all without a warrant, without reasonable suspicion, and without consent and with malice, and the criminal charges were dismissed in or about Oct. 2021. Moreover, these two deputy sheriffs physically beat and brutalized plaintiffs, and subjected them to thuggery. There are a video and audio recordings of the subject incident that depict much of this. During this incident, an Unknown Named Defendant deputy sheriff arrived at the scene and engaged in

conduct to prevent one of the plaintiffs from making a video and audio recording of the incident, pursuant to the custom and practice of the Sheriff to cover-up deputy sheriff misconduct.

10. The non-LASD defendants, each and all, are legally liable for all of this conduct because, with deliberate indifference, they caused it, ratified it, condoned it, or otherwise made it possible, by their actions and/or inactions, and caused and/or created LASD policies, practices, procedures, and/or customs, that caused the LASD sheriff's and officers' unconstitutional conduct, and because all of them failed in their duty to train police in proper, allowable, constitutional policing and jail procedures, and their failures amounted to deliberate indifference to the rights of persons with whom the police come into contact.

## COUNT ONE
### (Against All Defendants, 42 U.S.C. § 1983)

11. Plaintiffs reallege specifically the allegations set forth in averments 9 & 10, hereinabove, and, by virtue thereof, all defendants are liable to plaintiffs, pursuant to 42 U.S.C. 1983, for violation of plaintiff's Fourth Amendment rights and Fourteenth Amendment rights, not to be subjected to unreasonable searches, seizures, stops, arrests, and malicious criminal prosecutions.

12. The non-officer county officials who are defendants are responsible for the Fourth Amendment violations and Fourteenth Amendment violations committed by the deputy sheriff defendants because the members of the board of supervisors and sheriff set the policies and accepted the customs of the sheriff's department, among which were unconstitutional, brutalization of persons and infliction of police thuggery on persons, and plaintiffs herein were subjected to such brutalization and thuggery.

13. The non-officer county officials who are defendants are responsible for the Fourth Amendment violations and Fourteenth Amendment violations committed by the deputy sheriff defendants because the board of supervisor

1    members, and the sheriff each and all, individually and collectively set the policies

2    and accepted the customs of the sheriff's department, among which were

3    unconstitutional, pretextual stops of both pedestrians and persons in automobiles,

4    and plaintiffs herein were subjected to a pretextual stop, that has been ratified by

5    these defendants.

6                              **COUNT TWO**

7              (Against All Defendants for Conspiracy Under § 1983)

8         14. Plaintiffs reallege specifically hereat the allegations set forth at

9    averments nine through 13, hereinabove, and by virtue thereof, all defendants also

10   are liable to plaintiffs for conspiracy to violate plaintiffs' Fourth Amendment and

11   Fourteenth Amendment rights, pursuant to § 1983, because they had an agreement

12   and/or understanding that the wrongs perpetrated would be perpetrated, and then

13   those wrongs were perpetrated.

14        15. More specifically, the sheriff and supervisors, for many years, have been

15   aware of and permit and condone deputy sheriff misconduct, so that deputies feel

16   free to violate the Constitution's Fourth and Fourteenth Amendments, and here did

17   so, and the sheriff and supervisor defendants failed to investigate and covered-up

18   what occurred in this matter, on March 20, 2020, and in another matter, on March

19   10, 2021, in both instances by trying to prevent and cover-up video recordings of

20   deputy-misconduct, brutalization and thuggery events, and thereby approved of it,

21   condoned it, acquiesced in it, and ratified it, with a meeting of their minds that this

22   kind of unconstitutional conduct would occur.

23        16. The non-police defendants are aware that Sheriff's Dept. use pretextual

24   stops based on hunches, that it is unconstitutional for a stop to be based on a

25   hunch, and have approved of hunch-stops, condoned them, and ratified them, as

26   they did in this instance.

27                            **COUNT THREE**

28              (Against All Defendants, Under Sec. 1983, *Monell*)

                                        5

17. "[When] the complaint plausibly alleges a policy, custom, or practice leading to that violation[, *s*]*ee Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)[,] [and] Plaintiffs' allegations amount to . . . more than an 'isolated or sporadic incident[ ]' that . . . forms the basis f *Monell* liability for an improper custom. *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996)." *Saved Magazine v. Spokane Police Dep't*, 19 F.4th 1193, 1201 (9th Cir. 2001). Herein, all defendants are liable to all plaintiffs because they had and have, and foster, policies, practices, procedures, and customs of Fourth and Fourteenth Amendment violations by members of LASD, which policies, *etc.*, in violation of the these Amendments, were the moving forces that caused the violation of the plaintiffs' rights, as alleged herein, and, also the supervisor defendants are liable because they have a custom of improperly indemnifying, and of conspiring to indemnify, LASD deputies for punitive damages assessed against those deputies by juries in civil rights cases, or settling those cases to avoid having to vote on whether or not to make such indemnifications, because this practice was a moving force that caused the violations of the plaintiffs' rights as alleged herein.

18. Additionally, the supervisor defendants for many years have been aware of and permit and condone that they permit their sheriff to not properly administer the sheriff's department, and provides no proper training or discipline of deputies, so that deputies feel free to violate the Constitution and here did so, and the supervisor defendants have failed to investigate what occurred in the matter on March 10, 2021 and in this matter on March 20, 2020, and to take action against the sheriff for covering-up the incidents, and thereby approved of them, condoned them, approved of them, and ratified them, with a meeting of their minds that this would occur.

19. The supervisor defendants are aware that LASD deputies customarily use violate victims' constitutional rights, often by the use of excessive force, that

this is unconstitutional, and they have approved of such conduct and condoned it
and ratified it, as they have done in this instance.

20. This is their policy and custom, to do so.

### COUNT FOUR
(Against All Defendants Under § 1983)

21. The deputy defendants are legally responsible for maliciously initiating
criminal charges against plaintiffs, there was no probable cause to initiate those
charges, those charges all were dismissed, and therefore all defendants are liable to
plaintiffs for malicious prosecution under federal law.

### COUNT FIVE
(Against All Defendants Under § 1983)

22. Defendant Villanueva engaged in conduct to cover-up the March 10,
2021 and March 24, 2020 brutality incidents, by concealing both his knowledge of
them and the video tapes of them, and thereby attempted to and interfered with
plaintiff's federal constitutional right of access to the federal courts.

### COUNT SIX
(Violation of *Jus Cogens* International Law)

24. Defendants' actions, as set forth hereinabove, are in clear violation of
and are prohibited by the *jus cogens,* peremptory norms of international law that,
among other things, prohibit unlawful takings into custody by government.

25. Such *jus cogens,* peremptory norms are the law of the land in the United
States of America, and plaintiff and class members are entitled to damages for the
harm caused to them by defendants' violations of *jus cogens*, peremptory norms,
and to declaratory and injunctive relief, because the Ninth Circuit, in *Siderman v.
Republic of Argentina*, 965 F.2d 699 (9th Cir. 1992), has held these prohibitions to
be *jus cogens* norms.  That is, plaintiff and class members claim defendants are
liable to plaintiff and class members for subjecting them unlawful detentions, in
violation of *jus cogens* peremptory norms of international law, whose violation, in

7

turn, is a violation of the law of the United States of America, under the Supremacy Clause of the United States Constitution.

## COUNT SEVEN
### (Violation of *Jus Dispositivum* International Law)

26. Defendants' actions, as set forth hereinabove, are in clear violation of the *jus dispositivum* treaty obligations entered into by the United States of America, and which obligations, pursuant to Article VI, Clause 2 of the United States Constitution (the Supremacy Clause), are "the supreme law of the land . . . any thing in the Constitution or laws of any state to the contrary notwithstanding."

27. The specific treaties whose provisions prohibit unlawful detentions and cruel and unusual punishments, to which the United States of America is a signatory, and whose provisions were violated by defendants, are: Universal Declaration of Human Rights, G.A. Res. 217 (A) (III), U.N. Doc. A/810 at 71 (1948); the Declaration on the Protection of All Persons from Being Subjected to Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, G.A. Res. 3452 (1975); Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, G.A. Res. 39/46, annex 39 U.N. GAOR Supp. (No. 51) at 197, U.N. Doc. A/39/51, art. 1 (1984); Body of Principles for the Protection of all Persons under Any Form of Detention or Imprisonment, G.A. Res. 43/173, 43 U.N. GAOR Supp. (No. 49), U.N. Doc. A/43/49, at 297, Principle 5 (1988); the American Convention on Human Rights, O.A.S. Treaty Series No. 36, at 1, OEA/Ser. L./V/II.23 doc. Rev. 2, Art. 5); International Covenant on Civil and Political Rights, G.A. Res. 2200A (XXI), 21 U.N. GAOR Supp. (No. 16) at 52, U.N. Doc. A/6316 (1966), 999 U.N.T.S. 171, Art. 7; and, the European Convention for the Protection of Human Rights and Fundamental Freedoms, 213 U.N.T.S. 222, Art. 3, and by engaging in the conduct alleged, defendants violated those treaties and conventions, and thereby violated the laws of the United States of America, through the Supremacy Clause.

28. By virtue of the violations of the provisions of these treaties, plaintiff and class members are entitled to recover nominal damages and punitive damages from defendants, and to declaratory and injunctive relief.

29.-141. Reserved.

## COUNT EIGHT
### (Against All Defendants, RICO)

142. By doing the things alleged hereinabove, and/or aiding or abetting them, defendants thereby engaged in and committed the related RICO predicate acts, with similar purposes, results, participants, victims, and methods of commission, over a long and continuing period of time, going back at least 40 years, with a threat of continued racketeering activity of obstruction of justice, and continue to commit obstruction of justice, all by using instrumentalities of interstate commerce to accomplish their crimes, and thereby are liable under the civil RICO statute.

### Rico Predicate Acts

143. On or about March 24, 2020, defendants tried to prevent the video and audio recording of the subject brutality event, and on or about from March 10, 2021 to on or about March 10, 2022, defendant Villanueva covered up a video recording of a March 10, 2021 deputy beating up county jail prisoner Enzo Escalante, for over a year.

144. These cover-ups were done pursuant to LASD custom and were condoned, approved of, and ratified by defendant **VILLANUEVA**, and condoned by the supervisor defendants.

145. **Obstruction of Justice**  These cover-ups constituted at least two RICO predicate acts of obstruction of justice and occurred by defendants inflicting constitutional violations on plaintiffs and class members, and by preventing

plaintiffs and class members from exercising their federal constitutional rights, all as set forth hereinabove.

146. Each defendant, in his/her own right, and all defendants together, collectively, as well as their employees, who work in and for the County of Los Angeles, are all enterprises and associated-in-fact enterprises, within the meaning of 18 U.S.C. 1961(4), and therefore are RICO enterprises. All of the LASD defendants are a separate enterprise, like a true mafia, extortion/protection-type, racket-enterprise.

147. Each and all of defendants' activities affects interstate commerce, as well as intrastate and interstate travel.

148. Each defendant received and receives income, directly and/or indirectly, by way of insurance premiums, salary, compensation, reimbursement for expenses, *per diem* costs reimbursements, meals, lodging, and/or travel, pensions, *etc.*, from the pattern of racketeering activity alleged herein, and used and uses that income in the acquisition of an interest in and/or operation of the enterprise, in violation of 18 U.S.C. 1962(a), and acquired and/or maintained control over said racketeering enterprise through a pattern of racketeering activities, as set forth herein, in violation of 18 U.S.C. 1962(b).

149. Defendants conducted and/or participated, and continue to conduct and participate in, said enterprises' affairs through a pattern of racketeering activities, in violation of 18 U.S.C. 1962(c).

150. The pattern of racketeering activities included, and continues to include, a continuous pattern and practice potentially involving activities, including the RICO predicates of fraud, extortion, fraudulent concealment, and obstruction of justice, and defendants' defense of the instant action is and will continue to be and will be a continuation and a part of its RICO schemes, so that

those who may participate in the defense, of this action may make themselves liable under RICO.

151. Defendants' associated-in-fact enterprises constitute a present and continuing threat of harm and additional RICO violations.

152. The enterprises' activities have occurred on more than one, and on many thousands of occasions, over at least the past 40 years and have been done on numerous occasions and constitute at least a thousand separate acts, as set forth hereinabove, not including the acts that will be included as part of the defense of the instant action.

153. At least one thousand RICO predicate acts have occurred.

154. The wrongful acts described in the matters enumerated hereinabove occurred over a significant period of time, and are related in that they evidence civil RICO predicates, including at least fraud, wire fraud, mail fraud, extortion, and obstruction of justice, and they pose a threat of continued criminal activity, have the same or similar purposes, results, participants and kinds and categories of participants, victims, methods of commission, and are otherwise interrelated by their common characteristics and participants, they are not isolated events, but are both continuous and systemic, and each and all constitute a continuing pattern of racketeering activity and constitute a long term threat of continuing racketeering activity.

155. The activities led to defendants' control of and acquisition over the enterprises and resulted in the injuries to plaintiff and class members, as alleged herein, which resulted from defendants' participation in and control of the enterprises.

156. By failing to prevent the wrongful conduct herein alleged, misconduct that amounted to racketeering activities, all managerial and non-managerial

employees and/or officers and/or agents of defendants engaged in and condoned racketeering activities.

157. The willful and/or negligent mismanagement of the enterprises, with knowledge by defendants charged with management, and potentially other defendants, that they were and continue to be operated as a RICO enterprises, directly caused the harm to plaintiff and to class members, as alleged herein.

158. The enterprises are RICO enterprises because they have hierarchical structures and consensual structures for making decisions, and those structures have an existence beyond that which is necessary to commit the RICO predicate acts alleged herein, in that the hierarchical and consensual structures exist to accomplish doing business, and the structures for decision-making exist separate and apart from the racketeering activities.

159. Each defendant unlawfully conspired with others, including other defendants, by understanding and agreeing to do, and having a meeting of the minds, and taking overt actions to support the matters hereinabove alleged, to violate the provisions of 18 U.S.C. 1962(b), (c), and (d), and, continued and continue to do so, with the aid and assistance of co-conspirators

160.-272. Reserved.

## THE PLAINTIFFS'-CLASS ACTION ALLEGATIONS.

273. Plaintiffs are members of a class of persons have been harmed and are and/or were being harmed by being illegally stopped, arrested without probable cause, subjected to malicious prosecution, and subjected to physical brutality.

274. The class is so numerous that joinder of all members is impracticable, and also, because only defendants know the names of all the members of class, and are the only persons who have information sufficient to identify all of the members of classes, it is impracticable to join the members of those classes in these actions.

275. There are common questions of fact and of law with respect to each class member, to wit, as set forth in averment 273.

276. The claims made by the representative parties plaintiffs are typical of the claims of each plaintiff-class members' claims.

277. The representatives of the plaintiffs class fairly will represent and adequately protect the interests of all class members, and will do so both vigorously and very zealously.

278. Prosecution of separate actions by individual plaintiff-class members would create a risk of inconsistent or varying adjudications with respect to class members, which would establish incompatible standards for parties opposing the classes, and defendants have acted and refused to act on grounds generally applicable to each class, and class questions predominate with respect to each class.

279. Therefore, these actions are maintainable under Fed. R. Civ. P. Rule 23 (b)(1) and (2).

280.  It is impracticable precisely to  measure the size of the plaintiff-class, but it numbers in the several thousands.

281. The nature of the notice to be provided to class members is that, as an injunctive relief class, no notice is required; or, if required, defendants could be ordered to notify all of  their former prisoners; as to the damages class, defendants would be ordered to provide the names of all former arrestees and all L.A. County jail prisoners and detainees for the relevant time period, which goes back to two years before the date on which this action was filed, and then actual notice would be sent to them via USPS.

**WHEREFORE**, plaintiffs request relief against each defendant as follows:

1.  Compensatory damages $1,000,000 on all § 1983 claims and RICO claims, to be trebled on the RICO claims;

13

1        2.  Punitive damages on all non-*Monell* claims, in sums to be determined by

2  a jury, and as a percentage of the net worth of each defendant, in sums sufficient to

3  deter future misconduct, and not less than $100,000,000 per defendant;

4        4. The costs of action and interest;

5        5.  Attorneys' fees; and,

6        6.  Such other relief as is just and proper.

7                          **JURY DEMAND**

8  Plaintiff demands trial by jury of all issues.

9

10                    **YAGMAN + REICHMANN, LLP**

11                      By:  /s/  Stephen Yagman

12                         **STEPHEN YAGMAN**

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28